**In re SCRANTON DRY GOODS CO., INC. t/a Oppenheims, Bankrupt.**

**In re CONSTANCE REALTY, INC., Debtor.**

**In re WANOR, INC., Debtor.**

**Bankruptcy Nos. 79–13, 79–14, 5–80–00577 and 5–80–00578.**

United States Bankruptcy Court, M.D. Pennsylvania.

April 7, 1983.

Doran & Nowalis, John H. Doran, Robert C. Nowalis, Wilkes-Barre, Pa., for trustee.

Nogi, O'Malley & Harris, John Appleton, Norman Harris, Myles Wren, Scranton, Pa., for Oppenheim's, Constance Realty, Inc., and Wanor, Inc.

Saul, Ewing, Remick & Saul, William T. Windsor, Jr., Philadelphia, Pa., for Northeastern Bank.

Mattes, Mattes & Mattes, Roger Mattes, Scranton, Pa., for Trade Creditors.

Hughes, Nicholls & Moran, W. Boyd Hughes, Scranton, Pa., for Community Central Energy.

Levy, Preate & Purcell, Ernest Preate, Scranton, Pa., for Scranton Chamber of Congress.

## OPINION AND ORDER

THOMAS C. GIBBONS, Bankruptcy Judge:

At issue in this case are creditors' objections to a proposed plan of distribution in a Chapter VII proceeding. The objections challenge the validity of a security interest granted without court approval by the debtor to the Chapter XI creditors' committee prior to the order of adjudication for Chapter VII relief. For the reasons stated herein we find the security interest void.

The facts are as follows. The debtor filed for relief under Chapter XI of the Bankruptcy Act of 1898 (the Act) on January 3, 1979. The unsecured creditors' committee was designated by court order of February 15, 1979. A plan of arrangement was filed by the debtor on July 6, 1979, and a modified plan was filed on October 25, 1979. The modified plan was confirmed on February 1, 1980. Financing statements perfecting two security interests in the debtor's inventory were filed on February 6th and February 7, 1980, with Northeastern Bank of Pennsylvania (the Bank) as the nominal secured party. It has now come to the attention of the court that these financing statements were the product of negotiations among the debtor, the Bank and the Chapter XI creditors' committee, which culminated in the execution of a security agreement immediately prior to the approval of the modified plan. In the agreement the Bank and the creditors' committee were given a joint security interest in the debtor's inventory. It was further agreed that the Bank would act as agent for the committee's interest in the inventory and that the Bank's name would appear on the financing statements for both its interest and the committee's interest. The committee was apparently granted its security interest to secure payment of either its previously incurred committee expenses or the obligations of prepetition unsecured creditors. For the remainder of this opinion, we will assume for the sake of discussion that the security was given to secure the committee's expenses since the committee's position is more tenable on this basis. Ostensibly due to inadvertence, the Bank directed the clerk of the county court to mark satisfied the creditors' committee's financing statement rather than the Bank's. Promptly thereafter on September 29, 1980, the debtor, the Bank and the committee jointly applied to the court for an order reinstating the security interest. Since the application mistakenly informed the court that the security interest was authorized by the confirmed modified plan and that the reinstatement of the security interest would merely restore the status quo, the application was approved and no notice was sent to creditors. Due to the debtor's inability to effectuate the modified plan, the debtor was adjudged a bankrupt on November 3, 1980, thus converting the proceeding from Chapter XI to Chapter VII. Several creditors now object to the proposed plan of distribution on the grounds that the plan provides for payment to the creditors' committee in accordance with its status as a secured creditor.

The creditors advance three grounds in challenging the security interest: 1) the transfer alters the priority scheme provided by the Bankruptcy Act; 2) the granting of the security interest was void without prior notice to creditors; and 3) the financing statement inadvertently marked satisfied cannot be effectively revived to the detriment of creditors who arose prior to the satisfaction but after the filing of the initial financing statement.

The creditors' first argument is predicated upon the priority scheme provided by § 64 of the Act, former 11 U.S.C. § 104. That section provides that the costs and expenses of administering a bankruptcy estate are priority expenses entitled to payment prior to the claims of general unsecured creditors. The claims of the creditors' committee would thus be administrative expenses entitled to priority. The objecting creditors allege that the claims which arose after confirmation but before

adjudication are entitled to a priority equal or superior to that given by § 64 of the Act to the Chapter XI creditors' committee. The creditors further assert that in either case the granting of the security interest in the debtor's inventory violates the priority scheme of § 64 since the creditors' committee will be paid from the estate according to its status as a secured party rather than as a mere administrative claimant, thus effectively subordinating the remaining priority claimants since secured claims are paid prior to administrative claims.

Under its first theory the objecting creditors believe that claims that arose after confirmation of the modified plan but prior to the order converting the case to a Chapter VII proceeding are administrative claims entitled to pro rata payment with the creditors' committee. This position would have been more clearly supportable prior to the repeal of § 64b of the Act in 1952. See, Act of July 7, 1952, ch. 579, 66 Stat. 420, 426 (1952). Section 64b stated as follows:

Debts contracted while a discharge is in force or after the confirmation of an arrangement shall, in the event of a revocation of the discharge or setting aside of the confirmation, have priority and be paid in full in advance of the payment of the debts which were provable in the bankruptcy or arrangement proceeding, as the case may be.

Congress repealed this section due to certain shortcomings and contemporaneously enacted several other provisions which determine the priority of debts incurred after confirmation of a plan which ultimately fails. See, § 381 of Chapter XI, former 11 U.S.C. § 781; § 486 of Chapter XII, former 11 U.S.C. § 886; and § 669 of Chapter XIII, former 11 U.S.C. § 1069.

In this case § 381 is applicable. In pertinent part that section states as follows:

Sec. 381. Where, after the confirmation of an arrangement, the court shall enter an order directing that bankruptcy be proceeded with—

(1) * * *

(2) the unsecured debts incurred by the debtor after the confirmation of the arrangement and before the date of the entry of the final order directing that bankruptcy be proceeded with shall, unless and except as otherwise provided in the arrangement or in the order confirming the arrangement, share on a parity with the prior unsecured debts of the same classes, provable in the ensuing bankruptcy proceeding, and for such purpose the prior unsecured debts shall be deemed to be reduced to the amounts respectively provided for them in the arrangement or in the order confirming the arrangement, less any payment made thereunder; and

(3) * * *

Neither the plan of arrangement nor the order of confirmation provided for alteration of the general rule of § 381. In light of this, claims arising between confirmation and adjudication are not priority claims and would not receive payment of their claims until after the creditors' committee received payment on its priority claim. Consequently, on this basis, the granting of the security interest is harmless since the committee has not benefited by it.

Notwithstanding § 381, the security interest in question does alter the priority scheme of § 64. Section 64 provides that when a chapter proceeding, such as Chapter XI, is converted to a Chapter VII, "the costs and expenses of administration incurred in the ensuing bankruptcy proceeding . . . shall have priority in advance of payment of the unpaid costs and expenses of administration . . . incurred in the superceded proceeding. . . ." Thus the costs of the Chapter VII administration would have priority over the administrative expenses of the superceded Chapter XI, such as the creditors' committee expenses. Consequently, the debtor's granting of the security interest to the creditors' committee has worked to the detriment of the Chapter VII administrative claimants since the security interest disrupts the mandated priority scheme of § 64. With the security interest the Chapter XI committee will be paid as a secured claimant before any payments are

made for administrative expenses such as those of the Chapter VII administrative claimants.

Although we have determined that the granting of the security interest to the committee works to the detriment of the Chapter VII priority creditors in violation of § 64, we must also determine if the Act authorized invalidation of the security interest. Section 70d(5) of the Act, former 11 U.S.C. § 110(d)(5), indicates that certain transfers shall not be valid against the trustee. This section states as follows:

d. After bankruptcy and either before adjudication or before a receiver takes possession of the property of the bankrupt, whichever first occurs—

\* \* \* \* \* \*

(5) A person asserting the validity of a transfer under this subdivision shall have the burden of proof. Except as otherwise provided in this subdivision and in subdivision g of section 21 of this Act, no transfer by or in behalf of the bankrupt after the date of bankruptcy shall be valid against the trustee: *Provided, however,* That nothing in this Act shall impair the negotiability of currency or negotiable instruments.

This section states the general rule that transactions by or in behalf of the debtor are invalid if occurring after the commencement of bankruptcy proceedings but prior to the earlier of adjudication or possession of the estate's property by a receiver. Section 21g, former 11 U.S.C. § 44(g), and the remainder of § 70d exempt certain transactions from the rule but none is applicable in the case at bar. Consequently, the general rule applies and the transfer of the security interest by the debtor to the creditors' committee is invalid.

In conclusion, we have found that the security interest granted to the creditors' committee in derogation of the priority scheme of § 64 is invalid under § 70d. This renders it unnecessary for us to address the merits of the creditors' other objections. We will enter an order directing the creditors' committee to mark satisfied the securi-

ty interest in question and we will instruct the trustee to formulate a new plan of distribution of the assets of the estate in which the creditors' committee will be recognized as a Chapter XI administrative claimant only and not as a secured party.